Filed 7/23/26  Munro v. Amedson CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TAMARA CORRINE MUNRO, | B347122 |
| Petitioner and Respondent, | (Los Angeles County Super. Ct. No. 25STRO01770) |
| v. | |
| SINA DAVID AMEDSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Latrice Byrdsong, Judge.  Affirmed.

Sina David Amedson, in pro. per., for Defendant and Appellant.

No appearance for Respondent.

INTRODUCTION

Appellant Sina Amedson appeals a domestic violence restraining order (DVRO) entered against him and in favor of petitioner Tamara Munro.[1] On appeal, Amedson contends the trial court erred by: (1) applying the standards governing civil harassment restraining orders under Code of Civil Procedure section 527.6, rather than the appropriate standards under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et. seq.);[2] (2) proceeding with the hearing despite Amedson's claim he was not properly served with "a full packet of evidence"; (3) excluding character reference letters; and (4) issuing the DVRO without substantial evidence of "abuse" as defined under the DVPA. We reject all of these arguments and affirm.

FACTUAL BACKGROUND

Munro and Amedson dated between 2013 and 2014; they did not see each other for more than ten years after that time. Starting on January 1, 2025, Amedson began to persistently contact Munro via text and Facebook Messenger. Even after Munro communicated to Amedson that she wanted no further contact, he persisted for about a month, sending hundreds of messages, day and night. She finally blocked him on Facebook Messenger.

---

[1]     Amedson is proceeding in pro. per. Munro did not file a respondent's brief. When a respondent fails to file a brief, "the court may decide the appeal on the record, the opening brief, and any oral argument by the appellant." (Cal. Rules of Court, rule 8.220(a)(2).) Appellant still has the affirmative burden of establishing error. (*In re Janette H.* (1987) 196 Cal.App.3d 1421, 1426.)

[2]     All further statutory references are to the Family Code unless otherwise specified.

During the fires in Los Angeles County in January 2025, Amedson sent Munro a text message stating, "I hope the fires take everything you love so you can feel my pain," followed by several profanities, including, "Just stay the fuck away from me." On this and other occasions, Amedson indicated in messages that he would stop attempting to contact Munro, but invariably more messages would follow.

On March 17, 2025, Amedson arrived unannounced at Munro's residence, inside a secured complex. He left many items at her door, some of which had handwritten notations. Though Munro was not home at that time, she reviewed Ring camera footage, then obtained an emergency protective order.

On March 19, 2025, Munro filed her DVRO petition. The proof of service indicates that Amedson was personally served on March 24, 2025 with the DVRO petition and its exhibits, which included photographs and screenshots. Amedson filed a response on April 3, 2025, in which he asserted that Munro's petition was "based on misunderstandings and misinterpretations of [his] intentions."

The trial court heard the matter on April 8, 2025. Amedson asserted that the "sheriffs" who served him told him he "wasn't served a full packet of evidence." Nevertheless, he told the court he was ready to proceed with the hearing.

Both Munro and Amedson testified. Amedson also attempted to submit character reference letters on his behalf. The court did not admit those letters.

Amedson did not deny any of Munro's assertions. He admitted that he had received Munro's communications that she did not want further contact, stating, "I take full responsibility for my actions. I was not trying to harass

3

or … disregard or disrespect her wishes." He admitted sending the text about the fires, with the excuse that he "was having a lot of anxiety and trouble sleeping during the fires; so my doctor gave me Ambien," claiming he "wasn't intending on sending those messages."

After hearing testimony from the parties, the trial court initially cited the standard applicable to Code of Civil Procedure section 527.6 restraining orders but quickly corrected itself and applied the DVPA standards instead. The court determined Munro had established, by a preponderance of the evidence, that Amedson had engaged in acts of abuse as defined in sections 6203 and 6320, and granted the DVRO.

DISCUSSION

A. *The DVPA*

The DVPA permits the trial court to issue a protective order "to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved" upon "reasonable proof of a past act or acts of abuse." (§ 6300.) "Abuse" under the DVPA includes bodily injury (§ 6203, subd. (a)(1)); reasonable apprehension of serious bodily injury (§ 6203, subd. (a)(3)); and "behavior that has been or could be enjoined pursuant to Section 6320" (§ 6203, subd. (a)(4)). (See *R.R. v. C.R.* (2026) 117 Cal.App.5th 1262, 1271–1272.)

Section 6320 in turn permits an order enjoining a party from "molesting, attacking, striking, stalking, threatening, … harassing, telephoning, … contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party." (§ 6320, subd. (a).) The DVPA further defines "disturbing the peace of the other party" as "conduct that, based on the totality of the

4

circumstances, destroys the mental or emotional calm of the other party. This conduct may be committed directly or indirectly, ... and by any method or through any means including, but not limited to, telephone, online accounts, text messages, internet-connected devices, or other electronic technologies." (*Id.*, subd. (c).)

The DVPA requires a showing of past abuse by a preponderance of the evidence. (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226; see also *Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 90, fn. 14.) The trial court must consider "the totality of the circumstances" in determining whether to grant or deny a DVRO. (§ 6301, subd. (d).)

B. *Standard of Review*

We review the grant or denial of a request for DVRO for abuse of discretion. (*R.R. v. C.R.*, *supra*, 117 Cal.App.5th at p. 1272.) The question whether the trial court applied the correct legal standard in exercising its discretion is a question of law requiring de novo review. (*G.G. v. D.S.* (2024) 102 Cal.App.5th 413, 421.) To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review. (*R.R. v. C.R.*, *supra*, 117 Cal.App.5th at p. 1272.)

C. *The Trial Court Properly Applied the DVPA*

Amedson argues that the trial court improperly applied the standards applicable to civil harassment restraining orders under Code of Civil Procedure section 527.6 instead of the standards applicable to DVROs under the DVPA. He contends that the asserted error "cannot be deemed harmless" and requires reversal.

5

Amedson's assertion is unsupported by the record. Although the trial court initially referenced Code of Civil Procedure section 527.6, the court then corrected itself and expressly applied the proper standards under the DVPA. Specifically, the trial court found that "the parties have a qualifying relationship in that the parties have dated," and that "the petitioner has proven by a preponderance of the evidence that the respondent did engage in acts of abuse within the meaning of Family Code sections 6203 and 6320."

D. *The Trial Court Did Not Treat Amedson Unfairly*

Amedson next argues that the trial court violated his due process rights by proceeding after he claimed he was not served a "full packet of evidence," and declining to admit his character reference letters into evidence.

The record does not support Amedson's claim that he was not properly served with the petition and its attachments. The proof of service, signed by a deputy sheriff, indicates that Amedson was personally served on March 24, 2025 with Munro's DVRO petition and its attached exhibits. Amedson has not identified any evidence that was not served on him prior to the hearing, and at the hearing, Amedson indicated that he was ready to proceed. He had a fair opportunity to respond to the petition.

We also reject Amedson's claim that the court erred in excluding his proffered character reference letters. Evidence of a person's character is generally "inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) Amedson fails to identify how the character letters could have had any bearing on whether Munro's mental and emotional calm were disturbed by his actions or whether he had committed abuse against Munro as defined in the DVPA. Thus, Amedson

6

fails to meet his "burden of establishing error." (See *In re Marriage of Cochran* (2001) 87 Cal.App.4th 1050, 1056.)

E. *Substantial Evidence Supports the DVRO*

Finally, Amedson contends that substantial evidence does not support the DVRO. Specifically, he argues that there were no incidents after the March 19, 2025 filing of Munro's petition; the texts were not "direct threats;" and the fire-related message and the March 17, 2025 property drop-off do not establish "abuse" under the DVPA. We disagree.

Initially, we note that Amedson failed to address the relevant evidence supporting the DVRO, including the "hundreds" of contacts made, even after Munro made it clear she wanted no further contact. "A party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable. [Citation.]" (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.)

In any event, the trial court's order is supported by substantial evidence. Direct threats of physical violence are not necessary to find "abuse" under the DVPA. (*Parris J. v. Christopher U.* (2023) 96 Cal.App.5th 108, 116; see *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497; *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 602–603 [excessive communications and obtaining of address sufficient]; *Perez v. Torres -Hernandez* (2016) 1 Cal.App.5th 389, 398–399 [repeated emails and texts sufficient].)

In determining whether substantial evidence exists to support a court's order, "we may not confine our consideration to isolated bits of evidence, but must view the whole record in a light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences in

7

favor of the decision of the trial court.  [Citation.]  We may not substitute our view of the correct findings for those of the trial court; rather, we must accept any reasonable interpretation of the evidence which supports the trial court's decision." (*Melissa G. v. Raymond M.* (2018) 27 Cal.App.5th 360, 373–374.) Applying this standard, the trial court's order is supported by substantial evidence of "abuse" in light of the record as a whole.  The frequency of the attempted contacts, even after Munro had clearly communicated she wanted no further contact, and Amedson's unannounced arrival at her front door to drop off items when he could not have known she would not be home, constitute substantial evidence to support the DVRO.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to recover her costs on appeal, if any.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COGLIATI, J.*

We concur:


ZUKIN, P. J.


MORI, J.

*Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.